JOSEPH J. BRADLEY, WILLIAM PARSHALL, FRANCIS N. SEARLE and GILES EVERSON, plaintiffs in error, *vs.* THE PEOPLE, defendants in error.

The careless or negligent keeping of gunpowder in large quantities, near dwelling-houses, or where the lives of persons are thereby endangered, is a nuisance at common law.

On the trial of an indictment for erecting and maintaining a powder-house, and for keeping therein a large quantity of powder, near a city, a witness who had been in the infantry and artillery service of the United States for three years, was asked, "What is the ordinary mode of constructing powder magazines?" The question was objected to, by the accused, as incompetent and irrelevant, and not the proper manner of proving that the building in question was improperly constructed. The objection was overruled, and the witness proceeded to state how powder magazines were constructed. *Held* that the testimony was incompetent. MULLIN, J., dissented.

WRIT of error to review the proceedings in the court of sessions of Onondaga county, in which the plaintiffs in error were indicted and convicted of a nuisance.

They were indicted for erecting and maintaining a powder-house, and for keeping therein a large quantity of powder, near the city of Syracuse, to which they pleaded not guilty, and the indictment was tried at a court of sessions in said county, in November, 1865, and the defendants were found guilty.

It appeared on the trial that in June, 1865, the defendants, Bradley and others, erected the powder-house in question, of wood, and set it upon posts, the tops of which, on the east side, were five feet from the ground, and an open space was left between the floor and ground. It was located eleven rods north of the highway leading from Syracuse to Geddes, along which hundreds of persons were daily passing. The building was 26 feet long and 16 feet wide; the sides were of pine boards, and the roof was covered with cement. On the west side of it, at a distance of twelve rods, was a sand bed from which sand was taken daily, and the men engaged there were accustomed to smoke, and children were in the habit of playing around

Bradley *v.* The People.

the powder-house; and the defendants kept stored therein between one and two tons of powder. The powder-house was owned by three different firms, and each had access to it. Six or seven dwelling-houses were situated within seventy rods of it, one of them being within twenty-eight rods, and were so located at the time it was erected. The side of the powder-house below the floor, on the east, was left open until after the indictment was found, and persons were observed to go under the building for protection from the rain, and at one time a man was seen smoking there.

The plaintiffs in error claim that the judgment should be reversed, on the ground that the verdict was against evidence, and because improper testimony was admitted, against their objection.

*William J. Wallace*, for the plaintiffs in error.

*Wm. H. Gifford*, (district-attorney,) and *Charles Andrews*, for the defendant in error.

FOSTER, J. Upon the proofs I think the jury were well warranted in finding the defendants guilty; and I consider the cases of *The People* v. *Sands*, (1 *John.* 78,) and *Myers* v. *Malcolm*, (6 *Hill*, 292,) authorities in support of the proposition that the careless or negligent keeping of gunpowder in large quantities near dwelling-houses, or where the lives of persons are thereby endangered, is a nuisance at common law. In *The People* v. *Sands*, the motion was in arrest of judgment, for the reason that the indictment did not charge any carelessness or negligence in the defendant; but merely that he kept a large quantity of gunpowder in a house near dwelling-houses; and while the court held that the indictment was insufficient, and for that cause arrested the judgment, all the judges discussed the question involved in the present

case, and came to the conclusion that the negligent keeping of gunpowder would constitute a nuisance.

In this case, the careless and improper manner of building and continuing the powder-house and keeping the powder therein are fully charged, and the proofs are such that I do not see how the jury could find otherwise than they did.

On the trial several questions were propounded to witnesses by the prosecution, the answers to which were admitted, although objected to, on the part of the plaintiffs in error, to which rulings the plaintiffs excepted.

Edwin Jenney, a witness for the people, testified that he was in the infantry and artillery service [of the United States] for three years, and a portion of the time had charge of an ordnance bureau, &c., and he was asked "what is the ordinary mode of constructing powder magazines?" which was "objected to by the accused, as incompetent and irrelevant, and not the proper manner of proving the buidling in question as improperly constructed." The objection was overruled, and the decision excepted to, and the witness answered, "They are constructed of earth; a frame of heavy timber is first 'set in the ground, planked, no nails or iron used; the roof covered with earth three or four feet in thickness. The magazine proper is protected by an outside door, and several interior ones; no iron of any kind is used about their construction; and men are not permitted to enter them, except in their stocking feet."

If the object of this testimony was not to show that it was the duty of the accused to construct their powder-house in the same or substantially the same manner, it was immaterial and should have been excluded, because it might mislead the jury. And if it was intended to show that it was the duty of the defendants to build theirs in the same way, it was incompetent; for to hold that all dealers in gunpowder, who have occasion to keep it in

quantities, are bound to construct their storehouses for that purpose in the same way that is deemed necessary in forts and arsenals, would virtually interdict the traffic in the article by private persons, who could not afford the expense necessary to comply with any such requirement. With the selection of a suitable location I think a much less expensive warehouse would be sufficient. The court below doubtless admitted the testimony because it was thought to be material, and that it would aid the jury in determining the question of negligence on the part of the defendants; and it may have had that effect. At all events I cannot see that it did not effect the result.

It is unnecessary to examine the other questions raised, as I am of the opinion that the testimony so admitted was incompetent.

I am in favor of reversing the judgment, and for a new trial.

BACON, J., concurred.

MULLIN, J. dissented.

New trial granted.

[ONONDAGA GENERAL TERM, June 26, 1866. *Bacon, Foster* and *Mullin*, Justices.]