## UNITED STATES *v.* KELLER.

*(Circuit Court, D. West Virginia. 1884.)*

1. CRIMINAL LAW—PROVINCE OF JURORS.

   Jurors are not the judges of the law as well as the facts, but must take the law as given by the court.

2. SAME—INDICTMENT.

   Where each count in an indictment constitutes a distinct and separate offense, if one is found to be true the verdict must be "guilty," even though the jury finds against the other counts.

3 SAME—EVIDENCE—REASONABLE DOUBT.

   Preponderance of evidence against an accused party will not of itself warrant a conviction, but the jury must be satisfied beyond a reasonable doubt of his guilt as charged in the indictment.

4. MANSLAUGHTER—COLLISION—PROOF—MALICE—NEGLIGENCE.

   In trials for manslaughter, under the statute of the United States, making the officers of a steamer, in case of a fatal accident, liable to prosecution for that offense, it is not necessary to prove malice, provided negligence is proved, and a violation of the navigation laws, nor need it be proved that such negligence or violation were willful and intentional.

5. SAME—DEFINITION OF NEGLIGENCE.

   Negligence is the omission to perform some duty, or the violation of some rule, which is made to govern and control one in the discharge of some duty.

6. SAME—NAVIGATION LAWS—DUTIES OF PILOTS.

   In the event of there being no signal made on a descending steamer, as required by the navigation laws, or a signal made not understood on board of the ascending steamer, the latter must stop and not proceed again until the two steamers come to a complete understanding as to the course to be pursued.

7. SAME—RESPONSIBILITY OF PILOTS.

   If the ascending steamer fails to return the signal of the steamer descending, and chooses rather to make a cross-signal, the acceptance of this by the descending steamer does not excuse the pilot of the other for his first fault.

8. SAME.

   The wrongful act of the pilot of one vessel contributing to the accident does not justify the pilot of the other vessel for his neglect of duty.

For Manslaughter.

The case arose out of a collision between the steamers Scioto and John Lomas, in the Ohio river, between Mingo island and Indian Cross creek. The defendant was the pilot of the steamer Scioto, and was navigating his boat up the Ohio river on the fourth day of July, 1882, with about 500 persons on board. The John Lomas was at the same time coming down the river, also heavily loaded, but was much the smaller boat of the two, although much more strongly built than the Scioto. The boats came in sight of each other when they were about 1,200 yards apart, the Scioto being about Cross creek and the Lomas about the head of Mingo island. The defendant was indicted for manslaughter, under section 5344 of the Revised Statutes. The indictment contained four counts. The first count charged that the pilot of the John Lomas (his being the descending boat) blew one sound of his whistle for passing, by keeping to the right, when the boats were 900 yards apart; that the Scioto at the time this whistle

was blown was to the left of the Lomas, on the West Virginia side of the river; and that after said whistle was blown the defendant, without answering the whistle, steered his boat deliberately across the river in the direction the Lomas was going down; and when about the middle of the river answered with two sounds of his steam-whistle instead of one, as he should have done; and that by reason of this cross-whistle, and of other acts of misconduct, negligence, and inattention to his duties as pilot by the defendant, the boats collided, the Scioto was sunk, and that by reason and in consequence thereof the lives of 58 persons, whose names were given, and 25 others, whose names were unknown, were destroyed. This count also contained various specific charges of misconduct on the part of the defendant, such as being drunk, having too many people in the pilot-house, allowing women to steer the boat, etc. The second count was like the first except that it omitted a part of the specific acts of misconduct, etc., contained in the first. The third count charged that the signal for passing had not been sounded by the pilot of the John Lomas and answered by the defendant when the boats arrived at a distance of 800 yards from each other; that when they arrived at a distance of 800 yards from each other they were likely to pass near each other; that notwithstanding this fact both pilots failed to stop their engines, or to change their course, or to do anything to prevent a collision, but kept on in the direction of each other until the distance between them was about 500 yards, when the pilot of the John Lomas blew one sound of his steam-whistle for passing to the right and the defendant, the pilot of the Scioto, after some delay and without any necessity therefor, crossed the whistle and answered with two sounds of his whistle instead of one; and then contained the proper averments, showing that the death of the persons above referred to was caused by the misconduct, negligence, and inattention to his duties as pilot by the defendant. The fourth count was general, and charged in a general way, without any specific acts of misconduct, negligence, and inattention to his duty as pilot by the defendant; that the collision which was the immediate and direct cause of the death of these persons was caused by the misconduct, negligence, and inattention to his duties as pilot of the defendant. The evidence as to the position of the boats in the river at the time the whistle for passing to the right by the pilot of the steamer John Lomas was blown, and also as to the position of the Scioto in the river when the defendant answered with two sounds of his whistle, was conflicting.

The evidence for the government was that the first whistle of the John Lomas was blown when that boat was between the island and Mingo furnace; and that the Lomas was shaping her course towards the Ohio shore; and that at the same time the Scioto was down about De Vinny's warehouse, and about one third of the way out from the West Virginia shore; that after this one whistle of the Lomas the Scioto shaped her course, *quartering* (as the witnesses called

it) toward the Ohio shore, and at about the middle of the river the pilot of the Scioto blew his cross-whistle. On the other hand, the evidence of the defendant was that after passing around Cross-creek bar he shaped the course of his boat to the Ohio shore, and ran up that shore from 80 to 90 yards from it, and about parallel with the shore, to the place of the collision. He admitted that he did not stop the engines of his boat, or do anything else to prevent a collision, from the time the boats came within 800 yards of each other until he blew his cross-whistle, when they were from 350 to 400 yards apart; and that he then for the first time stopped his engines, and set them to backing, when he blew his cross-whistle; and that this was, in his best judgment, at the time, all he could do to prevent the collision which followed.

The pilot of the Lomas was examined as a witness for the defendant, and testified that when the defendant sounded his two whistles the boats were, in his opinion, about 500 yards apart, the Lomas running down the Ohio shore and the Scioto about the middle of the river and running *quartering* to the Ohio shore; and that her position in the river was such that he supposed her pilot was determined to run to the Ohio shore; and that for this reason he determined to give him the Ohio shore by starting his engines to backing and thereby get out of his way; and for that reason he answered the Scioto with two whistles and gave her the Ohio shore, which, in his opinion, was the best thing he could do under the circumstances; that when he set his engines to backing he supposed that his rudder was straight in the water, but he found, whether by his carelessness or what else, he did not know, his rudder had changed to the Ohio shore, and the force of the current took his wheel out of his hand and threw the stern of his boat towards the Ohio shore, and she ran in that position half way to the place of the collision before he got the control of his wheel again, but that when he did so the collision had become inevitable. He further testified that the blowing of the cross-whistle by the defendant had nothing to do with his wheel getting out of his hands. On cross-examination he testified that this cross-whistle did have something to do with the stopping of his engines, and the attempt to back his boat; and that but for those two whistles by the defendant he would not have stopped his engines, nor attempted to back his boat, and would have had no occasion to do so; and that if the defendant had answered with one whistle, and steered his boat accordingly, there would have been no collision.

Several pilots were examined as experts, and all of them testified that if the boats were running directly towards each other when they were 500 yards apart, and that the pilot of the John Lomas, even at that distance, blew one whistle, if the pilot of the Sciota had promptly answered with one whistle, and each boat had steered to the right in accordance with these whistles, that the collision could have been avoided.

*W. H. H. Flick*, Dist. Atty., and *James H. Ferguson*, Spec. Asst. Dist. Atty., for the Government.

*John A. Hutchinson* and *B. B. Dovener*, for defendant.

JACKSON, J., *(charging jury.)* It must be gratifying to you that we are at last approaching the conclusion of this protracted trial. Its great importance, both to the country and the accused, fully justifies the time consumed in its investigation. The defendant is indicted under section 5344 of the Revised Statutes, which declares "that every captain, engineer, pilot, or other person employed on any steam-boat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel, the life of any person is destroyed; and every owner, inspector, or other public officer, through whose fraud, connivance, misconduct, or violation of law, the life of any person is destroyed, shall be deemed guilty of manslaughter." The indictment in this case contains four distinct counts, setting up and charging the offense in as many different ways. The difference in the counts consists in the manner the offense is stated, and in describing different acts under the statute charged as general misconduct, negligence, and inattention to duty. Each count in the indictment constitutes a distinct and separate offense; and if you find from the evidence that the allegation as laid in any one of the counts in the indictments are true, it will be your duty to return a verdict of guilty, although you may find against all of the remaining counts. It is not the practice of this court to discuss the effect of evidence submitted to the jury, but to leave its consideration with the jury, as being more properly within the province of its duty. It is my duty to give you the law applicable to the issue as made up, which you are sworn to try and a true verdict to render, under the law and the evidence.

The court is asked to tell you that in the trial of criminal cases the jury is the judge of both the law and the fact. Such is not the case. The court explains the law, and it is both your moral and legal duty to accept it as given you "unless you can say upon your oaths that you are better judges of the law than the court." Of course you can disregard the instructions of the court and refuse to accept the law as given to you by it; but if you do you exercise a purely arbitrary power, which, in the case of an acquittal, makes the decision final, although the guilt of the party may have been fully established. It therefore follows that a jury which desires to discharge its whole duty must take the law from the court and apply it to the facts of the case it is called to pass upon. Before you can return a verdict of guilty against the accused, under this indictment, you must reach the conclusion that all the material allegations contained in some one of the counts in the indictment have been fully proved. It is not enough to convict that there is a preponderance of evidence against the defendant; but you must be satisfied from the evidence, beyond a reasonable doubt, of his guilt as charged in the indictment. This doubt must be real and substantial, and not an

imaginary or speculative doubt. It must rest upon the fact that the evidence is insufficient, in your judgment, to justify you in returning a verdict of guilty against the accused. If, therefore, you have such a doubt as I have described, it will be your duty to give the accused the benefit of it. It is manifest that when congress passed this act that its intention was to make all officers or persons who fall within its terms responsible for the loss of human life, when it results from their misconduct, negligence, or inattention to their duty. The law is humane in its provisions, and no one can question the wisdom and policy of congress in passing and placing it upon the federal statute books. It is the duty of the court, however unpleasant it may be, when called upon, to enforce it, and you, gentlemen of the jury, being an arm of the court in the execution of the law, if you reach the conclusion that this defendant has violated this statute, your plain duty is to return a verdict of guilty. You will observe, under the statute, that it is not necessary for you to find that the defendant was guilty of willful or intentional misconduct, negligence, or inattention to duty. It is sufficient if you find that he was guilty of a violation of the statute, in the absence of any intent; and if you so find, then a verdict of guilty should be returned. Otherwise your verdict should be for the accused.

In this connection it is proper that I should inform you what constitutes negligence. It has been well defined to be "a breach of duty." I think, however, the better definition is that it is an omission to perform some duty, or it is a violation of some rule, which is made to govern and control one in the discharge of some duty. Applying this rule of law, if you should find from the evidence that the accused omitted to perform any duty, or that there was an absence of proper attention, care, or skill, and the performance of his duties as pilot of the Scioto, then you must of necessity find him guilty of negligence; and that if in consequence of such negligence the life of any person was lost, then you must find him guilty as charged in the indictment. Upon your retirement to your chamber the first inquiry that should engage your attention is whether any of the persons named in the indictment lost his life in this collision. The fact that a number of lives were lost at the time of the collision is not disputed; but it is claimed by the defendant that the collision was not the immediate cause of the losing of life of any one of the persons named in the indictment. You will determine this question of fact, and ascertain whether the collision was the immediate cause of the death of any one of the persons named in the indictment. If you find the fact to be as the prosecution claims it, your next inquiry will be whether the loss of life was in any respect attributable "to the misconduct, negligence, or inattention to duty of the accused;" for if it was solely due to other causes, then the defendant would be excused. If, however, it is answered in the affirmative, you should then ascertain whether the accused was, as charged in the indict-

ment, the pilot on the Scioto, at the wheel, steering and guiding her, shortly before and at the time of the collision. In considering these questions, you should bear in mind the rule of law, that every one accused of crime is presumed to be innocent until his guilt is established by proof.

I have heretofore called your attention to the rules of criminal law applicable to this case, and it now becomes my duty to construe the rules and regulations for the government of pilots of steamers navigating the rivers flowing into the Gulf of Mexico and their tributaries. These rules are authorized by an act of congress, and were adopted by the board of supervising inspectors, June 1, 1871, and, as amended in 1880, were in force on the fourth day of July, 1882, when the collision occurred. Since their adoption they furnish the paramount rules for pilots in guiding and steering steamers on the rivers flowing into the Gulf of Mexico.

Under rule 1[1] it is the duty of the descending boat, when the steamers are approaching each other, to give the signal for passing, indicating on which side she will pass the ascending boat, and when such signal is given it is the duty of the ascending boat to promptly answer and accept such signal so given, which, being done, becomes an understanding between the pilots of the two steamers as to the course each steamer will take to avoid a collision in passing. This rule was binding on the pilots of both boats at the time the Lomas blew her first whistle and before the collision occurred, and it was their duty to obey it. Neither of them should have disregarded it, unless there was at the time such imminent danger of collision that to accept it would tend to increase that danger. It is a conceded fact in this case that the first signal was given by the Lomas blowing one blast of her steam-whistle, indicating that she desired to pass to the right of the Scioto, and that the pilot of the Scioto replied with two whistles. Under this rule it was clearly the duty of the pilot of the Scioto to accept promptly the signal given by the Lomas, if in his power to do so. This was his plain duty, and he had no right to disregard it so as to change and "cross the whistle." If he could not accept the signal of the Lomas without imminent danger to his boat from collision or otherwise, he should have stopped, and, if necessary, backed her, and waited until he had arrived at an understanding with the Lomas. Ordinary prudence demanded this much from an officer in his position, and if he failed to do this he neglected to pursue the course that ordinary care and prudence would require him to do. If you should reach the conclusion that this action of the pilot of the Scioto, in replying with two whistles instead of one, produced confusion between the pilots which contributed to or caused the col-

[1] Rule 1. When steamers are approaching each other, the signal for passing shall be one sound of the steam-whistle to keep to the right, and two sounds of the steam-whistle to keep to the left; the signals to be made first by the descending steamer.

lision, there can be no escape from the conclusion that he not only did what he ought not to have done, but he omitted to do what he should have done. But if the blowing of the cross-whistle did not contribute to or cause the collision, then the act would not of itself be negligence. But if you should find that the Scioto was in such a position, *without fault of her pilot,* when the Lomas blew her first whistle, that it was either too dangerous or too late to accept with safety the signal so given by the Lomas, and that a collision was so imminent as to be unavoidable, then you would be justified in excusing the defendant. Under this rule this is the only excuse the defendant can offer to justify his conduct. If, therefore, you find from the evidence that there was no contingency such as I have just referred to, it was his duty to accept the signal as given to pass to the right of the Lomas, if he could thereby avoid a collision. Otherwise he should have resorted to all the means in his power to prevent it.

Under rule 2 [1] the first clause provides, where two steamers are likely to pass near each other, and the proper signals have not been made and answered by the time they have arrived at the distance of 800 yards of each other, the engines of both boats should be stopped. Applying this rule, if you find from the evidence that the two boats were likely to pass near each other, it was the duty of the Scioto, if the Lomas had given no signal by the time they had arrived at *that distance,* to stop her engines and check her headway. It becomes, then, a pertinent inquiry to ascertain whether this was done, and was the rule complied with. If it was, and still the collision could not have been avoided, then, so far as this defendant was guilty of a neglect of duty under the first clause of this rule, he should be excused. But if an observance of the rule on his part would have prevented the collision, then it was his duty to comply with it, and stop the engines of his boat until a proper understanding was had with the Lomas as to the course each boat would pursue in passing; and a failure to do so was a culpable neglect of duty on his part, which would be inexcusable. Under the second clause of this rule, if the two boats had arrived at a distance less than 800 yards from each other, and no proper signals had been given and answered, or, if given, not properly understood, it was the duty of the pilot of the Scioto to stop the engines of his boat and back her until her headway was fully checked, and not to start his boat ahead again until the proper signals had been made, answered, and understood. You will perceive

[1] Rule 2. Should steamers be likely to pass near each other, and these signals should not be made and answered by the time such boats shall have arrived at the distance of 800 yards of each other, the engines of both boats shall be stopped; or should the signals be given and not properly understood from any cause whatever, both boats shall be backed until their headway shall be fully checked, and the engines shall not be again started ahead until the proper signals are made, answered, and understood. Doubts or fears of misunderstanding signals shall be expressed by several short sounds of the whistle in quick succession.

that this clause of the rule requires the pilot to stop his boat as soon as he arrives inside the 800 yards—the distance fixed by the rule. If the evidence should satisfy you that this was not done, then clearly this is a violation of the rule that was obligatory on him, and which it was his duty to observe. It is for you to decide whether such are the facts, and whether if the rule had then been observed in all its parts, this collision would have been avoided by stopping the engines of his boat and checking her headway. It was his plain duty to do so, and a failure to do it was a culpable neglect of duty.

Under rule 4,[1] if the Scioto was running close on the shore, and at that time the Lomas had come so near that it was possible for a collision to ensue, then the Scioto would not have been justified in crossing the river in front of the Lomas. This rule, of course, must be construed with rule 1, and it is intended to prevent the descending boat from requiring the ascending boat unnecessarily to cross the river, and at the same time to inhibit her from crossing in front of the ascending boat. But if the jury should reach the conclusion that when the Lomas blew one whistle she was either on a line with, or to the left, of the Scioto, and that when she replied with two whistles they continued the same course toward each other until the collision occurred, then rule 4 has no application to the facts of this case. You will, however, apply this rule to the facts, and determine whether these boats bore such a relation to each other as this rule contemplates.

In this case the defendant is responsible only for his own negligence and inattention to duty, and not for that of any other. You are to pass upon the charges as stated in the indictment against him, as it is a matter of no importance, so far as this trial is concerned, whether the pilot of the Lomas was guilty or not guilty of contributing to the collision. Both may be guilty, or one may be guilty and the other innocent. And in this connection it is to be remembered that any wrongful act of the pilot of the Lomas does not justify this defendant for neglect of duty; and the fact that the pilot of the Lomas accepted the cross-signal given by the pilot of the Scioto in replying with two blasts, is no justification for the action of the defendant in this case, and does not release him from the consequences of, or justify his act in, refusing to accept the first signal given by the pilot of the Lomas. And by this I mean that the rules did not authorize the pilot of the Scioto to change the signal. All he could properly do, if the signal given was one he could not accept, was to stop his boat and use all the means in his power to avert a collision. And it is for you to say whether he did follow the rules adopted for his guide in steering his boat; and whether he did all that any prudent and

[1] Rule 4. When a steamer is ascending and running close on a bar or shore, the pilot shall in no case attempt to cross the river when a descending boat shall be so near that it would be possible for a collision to ensue therefrom.

careful pilot could have done to avert the great calamity that over-took his boat. If this collision was the result of misconduct, negli-gence, and inattention to duty of others then the defendant's, and he in nowise contributed to it, of course it follows that no blame for it can attach to him. He is responsible only for his own conduct on this occasion, and not for the conduct of any other. You must try him upon the charges as laid in the indictment, and find whether they are true or false, and in your investigation you are to pass upon his acts and ascertain for yourselves whether he did, under the rules of navigation, and under the circumstances surrounding him from the time the two boats came in full sight of each other, all that he could do as a careful and prudent pilot to avoid the collision. In this case no question of error of judgment arises, but simply questions of fact which involve his duty, from the time the boats sighted each other until the collision occured.

I trust that you will bring to the examination of this case that calm and considerate reflection that a case of this importance requires. It is important both to the country and the defendant that the facts should be fairly and impartially considered, and the law properly applied, that you may arrive at a just and proper conclusion, and your action fully justified.

The jury found the defendant guilty of manslaughter in manner and form as charged in the indictment against him; and the court refused to set the verdict aside.