## 859.  CARBO v. THE STATE.

RUSSELL, J.  1. There can be no conviction of the offense of involuntary manslaughter, either in the commission of an unlawful act, or in the commission of a lawful act without due caution and circumspection, where the homicide is directly due to an independent intervening cause in which the accused did not participate and which he could not foresee.

2. To constitute a crime there must be either the joint operation of act and intention, or criminal negligence. Criminal negligence necessarily implies, not only knowledge of probable consequences which may result from the use of a given instrumentality, but also wilful or wanton disregard of the probable effects of such instrumentality upon others likely to be affected thereby.

3. Consequently, criminal negligence is not shown as against a defendant who uses every means in his power for the safety of those whom it is alleged his negligence has affected.

4. One who has an object of danger or a dangerous instrument of any kind upon his premises owes no duty with reference to the safety of others, except as to those likely to be affected thereby. And upon his trial for crime, it must appear that the injury to those affected by such dangerous instrument was due to such negligence on his part.

5. One who, with full knowledge of a danger of which he has been warned, encounters such danger himself, assumes all risks; and a resulting injury can not be made chargeable to another, where it appears that the injured person, being of sound mind and of the age of discretion, by the exercise of ordinary diligence could have avoided the injury.

6. Before one can be held criminally liable for the result of negligence, it must be shown, beyond reasonable doubt, that the result, though caused by the accused unintentionally, injuriously affected one who, but for his ignorance of the danger, might have escaped harmless. There can be no conviction where it appears that the person injured was apprised of the danger, and unnecessarily, and over the protest of the defendant, exposed himself thereto.                              *Judgment reversed.*

Indictment for involuntary manslaughter, from Chatham superior court—Judge Cann.  October 28, 1907.

Argued, January 13,—Decided July 31, 1908.

Carbo and Simpson were indicted for involuntary manslaughter in the commission of an unlawful act, by using, within the corporate limits of the City of Savannah, a certain detonating and fulminating preparation to the grand jurors more particularly unknown, contrary to an ordinance of that city making it unlawful to sell or use any detonating or fulminating preparation, or instrument made or composed wholly or in part of nitroglycerine or other detonating or fulminating substance whatever. After conviction a new trial was granted on the ground that the homicides

resulted from the mere having or keeping, and not from the using of the prohibited articles. A nolle prosequi was entered, and another special presentment was returned, charging involuntary manslaughter in the commission of a lawful act without due caution and circumspection, by assembling a large quantity of explosives in the city so negligently and improperly as probably to produce the unlawful homicide of the persons killed. The evidence showed, that the accused made torpedoes on premises at the corner of Anderson and Burroughs streets in Savannah, a thickly populated part of the city, and stored them, in large quantities, in a small wooden house or shanty on the same premises. On one occasion he had requested a woman living near to watch the house and turn away any boys or children she might see there, and answered affirmatively her suggestion that it would be dangerous if a spark or cigarette fell among the papers. On an evening in December, 1906, while Carbo and Simpson were in this house, an explosion occurred that burned them severely. They ran for relief to a house near by, where Carbo gave a key to a boy, or young man, and told him to lock up the place where the explosion occurred. In the meantime a fire alarm had been given, and firemen had come and extinguished some fire inside of the house. A little boy on the street said to one of them, "Mister, don't go in there; the thing is full of dynamite." This one went (after extinguishing the fire) to where Carbo and Simpson were, and asked Carbo if there were any high explosives in the house in question. He answered, "No," and said, "For God's sake, don't put any water there, nor allow any one to go in there." The fireman told him that he (fireman) had been in there and had put water in there. Carbo said no more after that; and the fireman went out and telephoned to his chief to come, as it looked dangerous. He came in about twenty minutes, and was told that the place looked bad; that he had better be careful how he went in there; that the boys said it was full of dynamite. He replied that they would have to make an investigation, and went into the house, followed by three firemen. There were some trunks and lots of rubbish. Packages were scattered over the floor, and a pile of stuff that looked like paper. The chief pulled down some of it, and was told, "You had better not do that; you don't know what you are handling." He said, "We have to make an investigation." A boy came to the

door, picked up something, and said it was the cause of the explosion that had taken place. He was told to put it down; and suddenly there was a flash and an explosion, followed by another or others, that killed one of the firemen outright and so badly burned and wounded two others that they died from the injuries so received. The force of it was such as to throw down men in the street.

Carbo, having been found guilty, moved for a new trial on the grounds, among others, that the verdict was contrary to law and evidence. In an opinion filed by the trial judge with his order overruling the motion, the following authorities were cited: 7 *Ga.* 13; 31 *Ga.* 185; 89 Ky. 287; 2 Colo. L. Rep. 78; 103 N. Y. 487, 57 Am. R. 766; 56 Barb. 72; 1 Johns. (N. Y.) 78, 3 Am. D. 296; 24 N. Y. Week. Dig. 828; 9 Crim. L. Mag. 155; 6 B. Mon. 174; 11 Humph. 159; 4 Mason, 505; 10 S. E. 838; 32 Am. R. 408; 19 Fed. 633; 67 Fed. 426; 67 N. W. 1020; 101 *Ga.* 407; 128 *Ga.* 561, and cit.; 45 L. R. A. 783; 3 C. & K. 123; 4 Cox C. C. 449; 116 *Ga.* 152; 80 *Ga.* 114; 2 Pa. L. J. R. 467; 114 *Ga.* 30; 2 Bish. New Cr. L. 424, 636, 637, 756, 579, 689, 635; 1 Whart. Cr. L. §152; 9 Colo. 544, 13 Pac. 696, 4 S. W. 409; 56 N. W. 79; 3 Am. D. 299; 34 N. W. 319; Whart. Hom. §374; 70 Ala. 33; 84 N. W. 520; 72 *Ga.* 167; 110 *Ga.* 748; Meigs, 106; 21 Cyc. 766.

*Twiggs, Oliver, Gazan & Oliver,* for plaintiff in error.

*W. W. Osborne, solicitor-general,* contra.