## OVERMAN *v.* THE STATE.

No. 12558. JANUARY 10, 1939.

*Claude C. Smith, F. Robert Morgan, B. J. Dantone,* and *James R. Venable,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Roy Leathers, solicitor-general, E. G. Arnall,* and *E. J. Clower,* contra.

ATKINSON, Presiding Justice. Frank Overman operated a roadside lunch-stand where beer, coca-cola, and other soft drinks were dispensed. Jack Howard purchased a bottle of beer which was wrapped into a package and delivered to him by a waitress in Overman's presence. On being informed of the price (12 cents for the beer and 3 cents for the bottle) Howard raised objection and returned the package. On further consideration he decided to pay the price and take the beer. He so informed Overman, and placed 50 cents on the counter as he picked up the package. He stood waiting for his change, and during the time engaged in conversation with Overman, who jocularly declared there was no change. Thereupon Howard, holding the package of beer in one hand, picked up a case of coca-cola, declaring that he would take it in lieu of

the change. Overman then told him that if he took the coca-cola he would shoot the package of beer out of his hand. Howard replied that he did not believe he would do it, and dared him to do so. At the same time Howard, saying that he would put the beer in his pocket, lifted it to do so. At this moment Overman pulled a pistol from under the counter and fired. The ball penetrated the breast, inflicting a wound from which Howard immediately died. The foregoing is gleaned from the uncontradicted evidence. In his statement before the jury the defendant said: "That night Jack come in there with his friend, and in a joking way, like he always does—he hardly ever comes in there without pulling something, or saying something; and it's just like the witnesses, some of them, stated about him walking over and getting the beer and the change. All of that was right, and picking up the coca-cola is correct, and absolutely daring me to do that; and how the gun went off, before God, I don't know. . . I did reach under the counter, but that gun, that little gun half the time is not loaded, and I just felt, you know, he was fooling with me and me with him, just like I always do, and as I did pull it out the tip touched the counter. . . And I wouldn't have done it for the world. . . I liked that man. . . As for any hurt feelings, gentlemen, against that man, or against anybody else, I haven't had it. I have never had it. I just did it, men, that's all. I tell you, before God and everybody now, it don't make any difference, I did it. No use to say I am sorry, because I am, but I will state this: that I wasn't drinking. . . I did it and didn't do it a-purpose, and I never had a word with that man in my life, never have. . . And I further want to state that when my gun—I tried to make that clear awhile ago—come out from under the counter that the butt of my gun struck the counter." Overman was convicted of murder, the verdict containing a recommendation for mercy of the court. The exception is to a judgment overruling a motion for a new trial, based on general and special grounds.

■ The court instructed the jury: "If a witness should wilfully and knowingly swear falsely, then that witness ought not to be believed, and it would be the duty of the jury to disregard the entire testimony of such witness, unless it should be corroborated, in which case the jury may believe the witness; it being always, however, gentlemen, as a matter of course, for the jury to say

whether or not a witness has or has not been successfully impeached." This charge was not erroneous, as contended, on the ground that it "directed the jury to believe wilful and knowingly false testimony if same is corroborated." Neither is the charge erroneous as thus contended: "Should a witness wilfully and knowingly swear falsely, but should said testimony [be] corroborated, then the jury may believe the witness; said charge was not a sound and abstract principle of law, and the same was misleading and confusing to the jury." See Code, § 38-1806; *Powell* v. *State,* 101 *Ga.* 9 (5) (29 S. E. 309, 65 Am. St. R. 277).

■ The court instructed the jury: "Now, gentlemen, under our law, legal malice is not ill will or hatred. It is an unlawful intention to kill without excuse, justification or mitigation, which intention, however, must exist at the time of the killing; but, gentlemen, it is not necessary that that intention should have existed for any particular length of time before the killing: In legal contemplation, gentlemen, a person may form the intention to unlawfully kill, may do the killing instantly, and regret the deed as soon as it is done." The last sentence in this charge was not erroneous, as contended, on the ground "that it sets out the precise facts of the case on trial, and is an expression of opinion by the court that the defendant was guilty of murder;" that it amounts to the direction of a verdict of guilty; that it was twice repeated by the court and was hurtful and harmful to defendant. *Dennis* v. *State,* 146 *Ga.* 191 (91 S. E. 19).

■ The court instructed the jury: "Now, with reference to involuntary manslaughter in the commission of an unlawful act: the essential elements, gentlemen, of involuntary manslaughter in the commission of an unlawful act are, first, the intentional commission of an unlawful act; and second, the killing of a human being without having so intended, but as the proximate result of such intended act. Now, gentlemen, such an unlawful act may, of course, be of such a nature as to make the homicide resulting from it murder, as, for instance, where such an act is one which, in its consequences, naturally tends to destroy human life, and the absence of an intention to kill would not, in that instance, reduce the killing from murder to involuntary manslaughter, but it would so reduce it in all other instances." This charge substantially states the provisions of the Code, § 26-1009, and is not erroneous,

as contended, because;  (a) "it does not give the legal definition of involuntary manslaughter, and was not a sound and an abstract principle of law;" (b) the charge "makes the offense murder if the death is 'the proximate result of such intended act,' and fails to define proximate cause;" (c) "proximate cause refers to civil and not criminal actions;" (d) the charge says "now, gentlemen, such an unlawful act may, of course, be of such a nature as to make the homicide resulting from it murder," which "is not a legal definition of an act 'which in its consequences naturally tends to destroy human life,' but broadens the whole scope of unintentional killing, and leaves to the jury to find any unintentional killing to be murder if they so desire;" (e) the use of the words "may of course" leaves the whole field of unintentional killings open to the finding of the jury, when the Code specifically limits the jury to a murder verdict to one condition only—the unlawful act "which in its consequences naturally tends to destroy the life of a human being."

■ It is contended that the court should have charged the law of voluntary manslaughter, "Because voluntary manslaughter was raised by the evidence in this case, at least five theories, to wit; (1) That the deceased was killed while in the commission of taking and carrying away the property of the defendant, and the deceased dared the defendant to shoot the property from his hand. (2) That the deceased was shot with a gun hastily grabbed or suddenly, without previous design or preparation. (3) That the deceased came to his death as the result of an argument with the defendant, and that the deceased started the argument with the defendant. (4) Because there was no proof of express malice in said case, and no proof of any malice except such as might be implied from the use of the weapon, which was hastily grabbed and suddenly, without previous design. (5) That the evidence . . showed taking and an asportation of defendant's property without right on part of deceased, and defendant's attempt to protect his own property; and therefore the failure to charge upon the law of voluntary manslaughter excluded from the jury's consideration the theories raised by the evidence and the defendant's statement." "In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person

killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied." Code, § 26-1007. The passion required to reduce the killing to the crime of voluntary manslaughter must be "that sudden,·violent impulse of passion supposed to be irresistible." Otherwise the killing should "be attributed to deliberate revenge, and be punished as murder." The "other equivalent circumstances" referred to in the statute do not include "provocation by words, threats, menaces, or contemptuous gestures." *Stevens* v. *State,* 137 *Ga.* 520, 522 (73 S. E. 737, 38 L. R. A. (N. S.) 99). Such circumstances need not be "in the nature of an assault or an attempt to commit a serious personal injury by the deceased," but they must be the equivalent of an assault, and such as would in cases of assault exclude all idea of deliberation or malice, and justify the excitement of passion. *Battle* v. *State,* 133 *Ga.* 182 (65 S. E. 382), and cit.; *Jackson* v. *State,* 156 *Ga.* 842 (3) (120 S. E. 535). They may include prevention of a misdemeanor upon one's habitation, property, person, or family, or a trespass upon one's property, habitation, person, or family, less than a felony. *Hughes* v. *State,* 159 *Ga.* 828 (2) (127 S. E. 113); *Crawford* v. *State,* 90 *Ga.* 701, 707 (17 S. E. 628, 35 Am. St. R. 242). But it was held in *Hayes* v. *State,* 58 *Ga.* 35 (7), "To intentionally kill, with a deadly weapon, one who is committing a trespass upon property, is generally murder, and not manslaughter. Wharton on Homicide, § 414. No exception to this general rule is involved in the present case, the trespass, if any, being the appropriation and removal of a small piece of timber of trifling value. What is said in 5 *Ga.* 86, and 18 Ib. 194, refers to trespass affecting the person, and not to trespass affecting the goods only." Applying the foregoing doctrine, the trespass in the instant case in taking the package of coca-cola in the circumstances described in the statement of facts was not sufficient to reduce the offense to voluntary manslaughter. The defendant, having refused to give the change, whether seriously or jocularly, should have anticipated some similar act by the purchaser, such as taking the coca-cola in lieu of the change. The doing of such counter-act was not, in the circumstances, reasonably calculated to produce uncontrollable passion on the part of the defendant, necessary to mitigate the killing of the purchaser by shooting him with a pistol. The case differs on its facts from *Crawford*

v. *State,* supra, where the person slain committed a trespass upon the defendant's property of trifling value, and attempted to cut the defendant with a knife (making an assault) while committing the trespass. It also differs from *Williams* v. *State,* 125 *Ga.* 302 (54 S. E. 108), *Rumsey* v. *State,* 126 *Ga.* 419 (55 S. E. 167), and *Mize* v. *State,* 135 *Ga.* 291 (69 S. E. 173), which did not involve a mere trespass on property. The evidence did not authorize a charge on the law of voluntary manslaughter, and it was not erroneous to omit to charge on that subject.

■ The ruling announced in headnote 5 does not require elaboration.

■ "If a man shoot with a pistol at another, and hit him, the law presumes, prima facie, that he did it with malice. Nor does the proof that the parties had been friendly, and that the person shooting expressed regret immediately afterwards, rebut the presumption. One has no right to shoot at another, with a loaded pistol, in sport. If he does so, he is responsible for the consequences; and the law will imply malice from the recklessness of the act." *Collier* v. *State,* 39 *Ga.* 31 (2) (99 Am. D. 449). The evidence was sufficient to support the verdict, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*