35438.   THOMAS *v.* THE STATE.

DECIDED JANUARY 21, 1955.

384

*George L. Goode,* for plaintiff in error.

*Carey Skelton, Solicitor-General, Johnson & Johnson,* contra.

TOWNSEND, J. 1. In *Carbo v. State,* 4 *Ga. App.* 583 (62 S. E. 140), it was held: "1. There can be no conviction of the offense of involuntary manslaughter, either in the commission of an unlawful act, or in the commission of a lawful act without due caution and circumspection, where the homicide is directly due to an independent intervening cause in which the accused did not participate and which he could not foresee. 2. To constitute a crime there must be either the joint operation of act and intention, or criminal negligence. Criminal negligence necessarily implies, not only knowledge of probable consequences which may result from the use of a given instrumentality, but also wilful or wanton disregard of the probable effects of such instrumentality upon others likely to be affected thereby." In *Cain v. State,* 55 *Ga. App.* 376 (1) (190 S. E. 371) it was held as follows: "Criminal negligence is something more than ordinary negligence which would authorize a recovery in a civil action. Criminal negligence as used in our Code is the reckless disregard of consequences, or a heedless indifference to the rights and safety of others, and a reasonable foresight that injury would probably result." The intent referred to is, of course, not the intent to kill but the intent to commit the unlawful act which proximately results in the death of another. *Overman v. State,* 187 *Ga.* 396 (3) (1 S. E. 2d 20). The acts of the defendant charged to be unlawful are failure to observe Code (Ann. Supp.) § 68-314, providing that it shall be unlawful to stop or park a motor vehicle on a State-aid highway less than eight feet from the center line, and Code § 68-303 (k) and Code (Ann. Supp.) § 68-316, requiring lights visible for 500 feet. As to the latter section, it appears from the evidence that the absence of lights was the result of a mechanical failure of the equipment

of the truck due to a blown fuse, and there is no evidence from which it might be inferred that this mechanical failure was either intentional or the result of negligence on the part of the defendant. There was no delay in seeking to correct the situation. It appears from the evidence that the Minyard car, from its position down the road approaching the truck, was so close that its driver actually saw the lights go out. It must have reached it within a matter of seconds, and within the next minute and a half one fuse had been tried and another was being put in. Accordingly, the failure to have lights burning on the vehicle must be considered the result of misfortune or accident for which there would be no criminal responsibility.

As to Code (Ann. Supp.) § 68-314, this was amended by the acts of 1947 (Ga. L. 1947, p. 1505) to provide "that the provisions of this section shall not apply to temporary stops made as a normal and reasonable incident to traffic conditions existing at the time." The traffic condition existing at the time was that the defendant, driving along a paved highway at night, was suddenly plunged into total darkness, and, although in motion, had no way of knowing whether he was continuing down the road, or running at an angle which, if continued, would take him over the shoulder of the road and into a ditch. In *Nelson* v. *State*, 27 *Ga. App.* 50 (4) (107 S. E. 400), the following charge of the court was approved: "A person has no right to operate a motor-vehicle upon the public highways of the State between the hours prescribed in the law without the lights therein prescribed; and if a person should be operating such motor-vehicle at night and between the hours prescribed in the statute, and the lights should become suddenly extinguished, it would be the duty of said person to stop, and not drive such vehicle further on a public highway; and if he should so drive after such lights become extinguished upon a public highway, he would violate this law and be liable to prosecution as for a misdemeanor." The evidence is somewhat in conflict, but there was evidence to show that there was room on the shoulders of the road for the defendant to have driven his truck; however, it was not his duty to continue driving, in total darkness, until he ran off the road, but it was his duty to stop immediately. Thereafter, of course, since he could not continue driving without lights, and since he could

not park on the highway less than 8 feet from the center line, it would be his duty in the exercise of ordinary prudence to ascertain the condition of the shoulders of the road, and their width, and to get the car off the road if it were possible to do so. Thus, it was not a violation of the law to *stop* the vehicle, and that part of the indictment which alleges that the defendant *stopped* and *halted* his vehicle sets out no unlawful act under the circumstances. The indictment also alleges, and the statute 'forbids, a *parking* of a motor vehicle within eight feet of the center line. To park is defined in Webster's International Dictionary as follows: "To stop and keep (a vehicle, esp. a motor vehicle), standing for a time on a public way, or to leave temporarily on a public way or in any open space, esp. in a space assigned for the occupancy of a number of automobiles. Statutes and ordinances placing restrictions on parking define the term variously. . . A vehicle halted while awaiting a traffic signal, or while allowing an occupant to alight, or a waiting passenger to get aboard, is not usually regarded as a parked vehicle." We think that parking includes the idea of intentionally stopping a motor vehicle with the intention of letting it remain stationary in the place stopped for some determinable period of time; and in this case any period of time less than that required by the defendant to accustom his eyes to the darkness and ascertain whether he could pull off the road would not be parking. Within that period, the Minyard car arrived. The defendant already had the fuse in his hand with which he intended to replace the blown fuse. Ordinarily, fitting in a fuse requires very little time, perhaps less time than to get out of the car and ascertain whether the vehicle may be removed from the highway. At the time the defendant halted his car he could not reasonably anticipate that Minyard would also stop abreast of him and effect a barricade of the highway. When, within less than two minutes, the York car was heard approaching, Minyard, who had the automobile not subject to mechanical defect, immediately jumped into his car to move it and unblock the road, and nothing the defendant could have done at that moment would, so far as appears, have averted the tragedy.

It follows from what has been said that the failure of the lights of the defendant's truck, and the halting of the vehicle

upon the public road, were not intentional unlawful acts on the part of the defendant, nor were the acts committed voluntarily, with the knowledge of and in wilful or wanton disregard of the fact that their probable effect would be to injure others. Accordingly, the State failed to prove either the joint operation of act and intention, or the criminal negligence which, under the rule set forth in *Carbo* v. *State,* supra, is necessary for conviction.

The trial court erred in denying the motion for a new trial.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*