## ROGERS v. THE STATE.

1. It was not competent to prove that the defendant was of weak mind, when it was admitted that he was not an idiot, or a lunatic, or an insane person.

2. The court having charged in its entirety the section of the Penal Code containing the law of voluntary manslaughter, the failure to give further instructions upon the law of cooling time was not error, no request having been made for any charge upon that subject.

3. The fact that the deceased, the wife of the slayer, may have been unchaste would not of itself amount to a justification of the homicide; nor would it, in the absence of a sudden heat of passion, resulting from adequate cause, be sufficient to reduce the homicide below the grade of murder.

4. A new trial will not be granted by this court because the trial judge, in the exercise of the discretion with which he is vested, prevented counsel for the defendant from reading, in his argument to the jury, a decision of the Supreme Court, which was entirely foreign to the issues made by the evidence and the statement of the accused.

Argued March 18,—Decided April 11, 1907.

Indictment for murder. Before Judge Cann. Chatham superior court. January 12, 1907.

Rogers was indicted for the murder of his wife. The evidence for the State showed, that she entered the store of one Andeppa to purchase some fish, and, while she was waiting for her purchase, the defendant entered the store and immediately began firing at her, two shots taking effect, one in the breast and one in the back. She fell on the floor and expired. Thereupon the defendant shot himself, inflicting a flesh wound in the arm and breast. In his statement to the jury he said: "The woman [deceased] worried and aggravated me in every way. . . She would take money from me and go down in Frogtown and spend it among dagoes. . . She would go around bad places visiting people that was not right. . . I told her about the company she kept, and told her it was not right, and she cursed me." He gave the following account of the tragedy: "I left [home] and went to Shuman's place, up the street, and stayed there, I guess, about forty-five minutes or one hour, and Shuman told me she was there looking for me, and I told him when I started home that I had better go and shun her. When I left Shuman's place I left with the intention of going home,—never thought she was in a place like that, among negroes and dagoes. She was standing by the door in this place, and as I

walked in she had the children in her left arm, up against the counter, and as I walked in she reached her hand down in her apron pocket, and after that I can't remember much about it." Witnesses for the defendant testified that they had heard the deceased curse and threaten the defendant, and had seen her pursue him with a knife, shortly before the killing, but none of the defendant's witnesses testified as to the circumstances of the shooting. The jury found the defendant guilty of murder, the court overruled his motion for a new trial, and he excepted.

*Twiggs & Oliver, Gordon Saussy, C. E. Donnelly,* and *T. L. Hill,* for plaintiff in error. *John C. Hart, attorney-general,* and *W. W. Osborne, solicitor-general,* contra.

BECK, J. (After stating the foregoing facts.)

1. Upon the trial of this case the defendant's counsel sought to introduce evidence to the effect that the defendant, from the time of his childhood, had been of feeble intellect and weak intelligence; his counsel stating to the court, however, that it was not contended upon the part of the defense that the defendant was either an idiot or an insane person, or that he labored, at the time of the homicide, under any form of delusional insanity. Upon motion of counsel for the State, the court repelled the testimony; and properly so, we think. The court could not have admitted it without either disregarding or violating a well-established rule controlling the admission of evidence of the character indicated. In *Studstill's* case, 7 *Ga.* 3, the court held that it was not competent to prove that the defendant was of weak mind, where it was admitted that he was neither an idiot, nor a lunatic, nor an insane person. The standard of responsibility upon the part of one charged with the commission of a criminal act has been fixed by law. "A person shall be considered of sound mind who is neither an idiot, a lunatic, nor afflicted by insanity, or who has arrived at the age of fourteen years, or before that age if such person know the distinction between good and evil." Penal Code, § 33; *Loyd* v. *State,* 45 *Ga.* 57; *Taylor* v. *State,* 105 *Ga.* 777. The standard fixed by law, whether the defense be insanity, or weakness of mind amounting to insanity, or idiocy, is thus laid down in *Roberts* v. *State,* 3 *Ga.* 310, "If a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible. An exception to this rule, however,

is where a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet in consequence of some delusion, the will is overmastered and there is no criminal intent. Provided that the act itself is connected with the particular delusion under which the prisoner is laboring." This doctrine has been uniformly adhered to by this court where similar questions were presented for decision. *Danforth* v. *State,* 75 *Ga.* 614; *Carr* v. *State,* 96 *Ga.* 284; *Flanagan* v. *State,* 103 *Ga.* 619; *Taylor* v. *State,* 105 *Ga.* 746; *Minder* v. *State,* 113 *Ga.* 772. And the evidence being inadmissible, because, if accepted by the jury as true, it could not establish or tend to establish the non-responsibility of the defendant for his criminal act, it should have been rejected. That the jury might have been inclined to consider such evidence in fixing the punishment, after having found the defendant guilty, afforded no reason why this incompetent testimony should have been introduced for their consideration. While juries must remain unrestrained in the exercise of their discretion in the matter of the recommendation of the punishment by death or by life imprisonment in the penitentiary, where the accused is convicted of a capital offense, this fact should in no way affect the court in its rulings upon evidence which is immaterial or irrelevant so far as the issues upon trial are concerned.

2. One ground of the motion is based upon the fact that the court failed to charge the jury "upon the law of cooling time." No request to charge upon this subject was preferred by counsel for defendant. The judge, in his general instructions to the jury, gave the section of the Penal Code embodying the law of voluntary manslaughter (§ 65). This section contains the broad, general principle of the law of "cooling time," and even if the facts authorized a more specific instruction upon that question, the failure to give it, in the absence of a written request, was not error.

3. As a part of his instructions to the jury, the court charged as follows: "If you find that the wife was unchaste, or otherwise a bad woman, that would not of itself amount to a legal justification of the homicide, nor would it, in the absence of a sudden heat of passion, resulting from adequate cause, be sufficient to reduce the homicide below the grade of murder." Error is assigned upon the giving of the above charge, upon the grounds: "(a) There was no evidence in the record to justify this charge, as all evidence of

unchastity upon the part of the wife had been ruled out by the court. Therefore, there being no testimony to warrant such a charge, such charge was calculated to prejudice the jury; as they might naturally infer that this was the cause of the killing. (*b*) Because even if there had been any such evidence, it was error for the court to inform the jury that such evidence would not be sufficient in law to reduce the homicide below the grade of murder." Reference to the defendant's statement to the jury, as it appears in the record, will show that the first criticism is without merit, as the defendant, throughout that statement, insists that his wife had been guilty of such conduct as to satisfy him that she was unchaste, and a woman of bad character. And a sufficient reply to the second criticism of the charge is that, even if the defendant's conclusions from what he had observed of his wife's conduct were correct, it did not justify him in taking her life, nor reduce the killing from the crime of murder to any lower degree of homicide. The principle of law embodied in the charge was sound, wholesome, and well established. *Fry* v. *State,* 81 *Ga.* 645.

4. Counsel for the accused, during his argument, commenced reading to the jury a portion of the decision in the case of *Flanagan* v. *State,* 103 *Ga.* 619, and was stopped by the court; and it is insisted that the court committed error in holding that counsel could not read from that case to the jury. It does not seem to us, however, that in this ruling the court appears to have abused its discretion,—no evidence whatever having been introduced to which the doctrine laid down in that case upon the subject of delusional insanity was in any way pertinent or applicable. While it is true that, under the practice in this State, counsel are allowed to argue to the jury the law as well as the facts, and should be allowed great latitude in the selection and presentation of those cases which in their judgment will assist the court and jury in a proper application of the law to the case as made by the evidence and the statement of the defendant, it is also true that the court exercises a discretion in such matters which this court will not interfere with, where it is not abused. And this does not appear to have been done in the present instance.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*