## STEVENS *v.* THE STATE.

1. If a wife had been suspected by her husband of infidelity, and some little time thereafter she stated to him that she had been guilty of adultery, and expressed an intention to see her paramour again, and if thereupon her husband seized a gun and killed her, such facts were not sufficient, under Penal Code (1910), § 65, to authorize submission to the jury of the theory of voluntary manslaughter, though a charge on that subject was requested.

(*a*)  The evidence for the State showed a plain case of murder. The statement of the accused alone raised the question determined in the preceding headnote.

2. None of the grounds of the motion for a new trial are such as to require a reversal.

FEBRUARY 13, 1912.

Indictment for murder. Before Judge Brand. Clarke superior court. November 11, 1911.

*Green & Michael* and *George C. Thomas,* for plaintiff in error.

*T. S. Felder, attorney-general,* and *Clifford Walker, solicitor-general,* contra.

LUMPKIN, J.   Stevens shot and killed his wife.   He was convicted of murder, moved for a new trial, and, upon the overruling of his motion, excepted.

1.   The case turned upon one leading point,—whether the evidence or the prisoner's statement involved the theory of voluntary manslaughter, so that a failure to charge on the subject, or a refusal to give in charge certain requests, requires a reversal.   The evidence presented no such theory,   It showed a shocking, brutal murder.   Did the statement of the accused require a charge on that subject, on request?   The statement was, in brief, as follows: He had received warnings that his wife was unfaithful to him.   On a certain Tuesday evening he pretended that he was going to a neighboring town, but returned about half past eight o'clock, and found the lamp turned low, his wife in the act of turning down the bedclothes, and the man with whom she was suspected of being intimate sitting down, with his slippers untied.   The man left, and the wife made some excuse.   On the following Sunday the wife left, saying she was going to see her mother, and remained away about three weeks.   On her return she expressed an intention to pack up her personal property and leave.   Some words followed as to the rumors in regard to her, and she said (referring to the man in question) : "Yes, I had him, and there isn't a durn bit of help for it," and "if Jim can't come in the house you pay rent in, he can come in one you don't pay rent in."   Thereupon the accused seized a gun and shot her.   He did not know what he was doing.   That is the reason he shot her.

Reduced to its finality, the question is, whether a statement by a wife to her husband that she has been guilty of adultery and an expression of an intention to see her paramour again, may suffice to reduce the killing of her by her husband to manslaughter. The Penal Code (1910), § 65, declares: " In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied.   Provoca-

tion by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." It was argued that while the words uttered by the wife would not justify the homicide, or amount to an assault, or an attempt to commit a serious personal injury on the accused, they might amount to "other equivalent circumstances to justify the excitement of passion," and suffice to reduce the crime to voluntary manslaughter. We can not concur in this construction of the statute. Immediately following the words last quoted, it is declared that provocation by words shall in no case be sufficient to reduce the crime from murder to manslaughter, thus excluding words alone from amounting to "equivalent circumstances." *Edwards* v. *State,* 53 *Ga.* 428.

It is not necessary to undertake to define accurately that expression; but an illustration or two may not be out of place. An attempt to commit a serious personal injury on a member of one's family in his presence, the catching of a man in adultery with one's wife, or a violent trespass on one's property in his presence, and a killing then taking place, might authorize a submission to the jury of the theory of voluntary manslaughter. But mere words will not. In some cases where it may appear at first glance that words were treated as authorizing a submission of that theory, a careful consideration will show some added fact or conduct on the part of the person slain. Thus, in *Golden* v. *State,* 25 *Ga.* 527, 533, the deceased seized a tumbler. In *Mack* v. *State,* 63 *Ga.* 693, the person killed had a knife in his hand, raised above the father-in-law of the accused, whom he held by the waist. In *Mize* v. *State,* 135 *Ga.* 291 (69 S. E. 173), there was evidence tending to show an absence from home of a little daughter of the accused, a boastful declaration by a boy indicating that he had had illicit relations with her, when questioned by her father, the presence of the boy's father with a gun, a firing by the accused at the boy, the presenting of a gun toward the accused by the boy's father, and the shooting of the father by the accused. While some broad language was used in the opinion, it was not ruled that words alone can reduce murder to manslaughter.

2. None of the other grounds of the motion were such as to require a new trial. The evidence fully sustained the conviction.

*Judgment affirmed. All the Justices concur.*