## SMITH *v.* THE STATE.

No. 8948. JUNE 14, 1932.

*E. R. King* and *Ben M. Turnipseed,* for plaintiff in error.

*George M. Napier, attorney-general, B. T. Castellow, solicitor-general, T. R. Gress, assistant attorney-general,* and *Bond Almand,* contra.

GILBERT, J. George Smith was convicted of murdering his wife, Nella. The killing occurred on Wednesday, July 1, 1931. On the previous "Monday morning" Smith was informed by another that his wife had had illicit intercourse with James Hanks. On the day of the killing a number of negroes, including Nella Smith, had gathered at a church for the purpose of cleaning off

the cemetery. While the work was in progress and after Nella had been there for some time, George Smith came up in an automobile with several other men. At the time of his arrival Nella was sitting under a tree with a baby on her lap. Smith went around the church and disappeared from view. Shortly afterwards he came back into view. He asked a witness, "Have you seen James Hanks here to-day?" and upon receiving a negative answer said, "I heard that he was looking for me and had a gun to kill me, and I would not pay any attention to it, but I met four men in my car looking for James Hanks, and if I had found him one of us would have died." He asked this witness to go and tell Nella that he wanted to speak to her, and the witness refused. Smith then "walked up behind Neller," saying "Neller, step here a minute." She "returned no answer, and he walked in front of her and said, 'Aint you coming?' and she still said nothing, and about that time he pulled a pistol." Nella jumped up and ran with the baby in her arms, asking him not to shoot her. He started chasing her, but Nella's sister ran into him and interfered momentarily with his pursuit. After she had run around the cemetery for a distance of about 260 yards she fell down, the baby rolling away on the ground. Smith ran up, put his left hand on her shoulder, and fired one shot from the pistol into her body while she was on the ground and trying to get up. He then fired three more shots into her body, and she died within a few moments. One witness testified that Smith had stated to him that he intended to have his wife assist him in gathering his crop, and then to go to Florida with a woman who was the wife of another man. The defendant made the following statement: "Well, all the time I would go to the field, and when I went back she would be gone and never have something for me at noontime, and I would have to take my dinner at my sister's. So I heard that she was going with this man, and I went and ask Doodle-finger about it, and he told me what he saw him and her doing. That was Monday morning, and I went to this church. I wasn't looking for her. I was looking for a man, and I called her and told her that I wanted to speak to her, and she said she had him. I would not have killed her for nothing in the world, for I thought a heap of her."

■ One ground of the motion for a new trial, this being the ground chiefly insisted upon in the oral argument of the case, com-

plains of a refusal to charge the jury as follows: "I charge you, gentlemen, if you believe from the evidence in this case, or from the defendant's statement, that his wife was guilty of adultery, and such conduct and infidelity on her part was communicated to him by her or other witnesses, and that such communication made by her to him or other witnesses so aroused his passion until, in the heat of such passion excited by the words and conduct of his wife, shoots and kills his wife in such circumstances as to justify the excitement of passion, and that defendant was not actuated by malice or a spirit of revenge, I charge you that such killing would be voluntary manslaughter and you would be authorized to so find the defendant guilty of voluntary manslaughter." It is insisted that the charge, duly requested in writing, was authorized by the prisoner's statement, and that the refusal of the request constitutes reversible error. The majority of the court hold that the trial judge erred in failing to give in charge the requested instruction submitting the issue of voluntary manslaughter. Penal Code, § 65; *Jackson* v. *State,* 135 *Ga.* 684(2). Under the provisions of our statute as amended by the act of 1899 (Ga. Laws 1899, p. 41), it is a question for the jury to determine what is sufficient cooling time. The writer, under the facts of this case, dissents from the ruling here made.

■ Another ground of the motion complains, and this question was also referred to in the oral argument, that the court erred in instructing the jury, on the subject of justifiable homicide, that "if you should believe that the defendant did shoot and kill the person named in the indictment, . . and that at the time of such killing the circumstances were not such as to excite the fears of a reasonable man that the defendant was in danger from the deceased, and furthermore that the circumstances were not such as to convince a reasonable mind that it was necessary to kill the deceased *in order to prevent the seduction* [italics ours] of the wife of the defendant by another, or to prevent an act of adultery on the part of another with the wife of the defendant, but that the killing was done deliberately and in revenge for a past act," etc. It is unnecessary to repeat the entire excerpt quoted in the motion. It is sufficient to say that the exception is to the use of the word "seduction." It is argued that a married woman can not be seduced, and therefore to use the word "seduction" with reference to

the facts of this case was erroneous and injurious to the accused; and furthermore that the word "another," used repeatedly in said excerpt of the charge, was used in such manner by the court as to impress upon the mind of the jury that the defendant was being tried for the murder of James Hanks, the alleged co-adulterer with the wife of the defendant, when the accused was in fact being tried for the murder of his wife Nella Smith. The criticism on the charge as quoted is not justified. The use of the word "seduction" instead of the word "adultery" furnishes no cause for reversing the judgment. The word was used not technically, as would be the case if the accused was being tried for seduction or adultery. It was used in a more general sense, such as we find in Webster's Dictionary, to mean a wrong-doing, or the offense of inducing a woman to surrender her chastity, or the means of corrupting. It has been used in the latter sense by courts of review, as in *Wilkerson* v. *State*, 91 *Ga*. 737, where a similar case was under consideration. As to the charge being calculated to mislead the jury and to cause them to believe that the defendant was on trial for the murder of Hanks instead of his wife, that is so extremely unlikely that it can not be deemed ground for setting aside the judgment.

■ There are other grounds of the motion, which have been carefully considered, but they do not show error and are not of such character as require special discussion.

*Judgment reversed. Russell, C. J., Beck, P. J., and Atkinson and Hill, JJ., concur.*

GILBERT, J., dissenting. This court has said: "This court will go as far as the rules of established law will permit in protecting the virtue and chastity of the wives and daughters of this State from the criminal wiles of the adulterer and seducer, and will uphold husbands and fathers in all they may lawfully do to maintain and protect the sanctity of their homes and firesides." And again, "The law permits and will justify the homicide of another by the husband to prevent the seduction of the wife, or even to prevent the committing of a single act of adultery, if by his previous conduct he has not forfeited the right." *Wilkerson* v. *State*, 91 *Ga*. 734, 737; *Gossett* v. *State*, 123 *Ga*. 434. As has frequently been stated and as reiterated: "But in such cases, whether relating to wife or daughter, the idea of prevention or defense against an im-

pending or progressing wrong must be involved, in order to render the homicide justifiable." *Gossetl* v. *State,* supra. "To deliberately kill in revenge for a past injury, however heinous, after reason has had time to resume its sway, can not be justifiable." *Hill* v. *State,* 64 *Ga.* 453 (2) ; *Gossell* v. *State,* supra. In *Wilkerson* v. *State,* supra, the court said: "The simple truth is, that while the law may justify a homicide committed for the purpose of preventing adultery, and may excuse a homicide on the part of one who promptly resents unto death an unauthorized and totally indefensible invasion of his marital rights, the law never makes justifiable a homicide committed in a spirit of revenge, and for the purpose of revenge only." The court was speaking there particularly of facts which would justify the killing or would constitute justifiable homicide. Those principles are related to but not identical with the question of what facts would be sufficient to justify the excitement of passion, and to reduce the homicide from murder to voluntary manslaughter. It must not be forgotten, whether discussing voluntary manslaughter or murder, that the basic principles upon which one is to be adjudged guilty or not guilty of either of these offenses is one of protection; that is, the right of one to protect the wife or daughter.

Where, instead of slaying the adulterer or seducer for the purpose of protecting the virtue of one's family and to protect the sanctity of his home, the wife or daughter is slain, it would seem that the very foundation of the law has been destroyed. In other words, in laying down the law mentioned above, the purpose was not to palliate or to excuse the killing of the wife or daughter, as the case may be, but that does not take away the right to have the offense reduced because of the human element of weakness due to the excitement of irresistible passion. The Penal Code, § 65, provides that in order to reduce murder to voluntary manslaughter "there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, *or other equivalent circumstances to justify the excitement of passion and to exclude all idea of deliberation or malice, either express or implied."* (Our emphasis.)

In *Fry* v. *State,* 81 *Ga.* 646 (4) this court said: "That the wife was unchaste or otherwise a bad woman would certainly not justify the homicide, nor would it, in the absence of a sudden

heat of passion resulting from adequate cause, tend to reduce the homicide below the grade of murder." There it was expressly held that the sudden heat of passion which would be sufficient to reduce the homicide below the grade of murder must result "from adequate cause." In that case the husband was convicted of the murder of his wife. It could not be insisted that there is anything in the evidence upon which the charge could have been based. The prisoner's statement is set out in full in the statement preceding the opinion. It will be seen that the accused stated to the jury that he had heard that his wife was going with another man; that he asked a friend about it; that his friend verified his suspicions; that he learned this on "Monday morning;" that on Wednesday he went to the church (where from the evidence it appears that his wife and other colored people were cleaning up a cemetery). The accused stated that on arriving there he said, "I called her and told her I wanted to speak to her, and she said she had him." He further stated "I would not have killed her for nothing in the world, for I thought a heap of her." In the statement he does not expressly state that he had heard that his wife had had illicit intercourse with another man, but that appears from the evidence; therefore we treat the statement as if the accused had said that a friend had told him on Monday of having seen his wife in illicit intercourse with another man; that he went to the church on Wednesday, saw his wife, told her he wanted to speak to her, and "she said she had him." It is insisted that these words, "she said she had him," amounted to an admission by the wife that she had had illicit intercourse with the man in question, and that they were sufficient to excite passion which was irresistible, and that the facts were such as to justify such excitement of passion. It has been held in a number of cases that a killing done under a sudden passion caused by the discovery of the wife's illicit conduct, when acted upon with sufficient promptness, would constitute equivalent circumstances as those terms are used in the Penal Code, § 65; but that provision is coupled with the further provision that the circumstances must also be sufficient "to exclude all idea of deliberation or malice, either express or implied."

In *Smith* v. *State,* 73 *Ga.* 31, the court held: "If the killing was without malice, that is, was done without a deliberate intent unlawfully to take human life, then it was not murder. If it was

done without malice, upon a sudden heat of passion, it was voluntary manslaughter; and whether it was done with or without malice depends much upon the weapon used. If done without legal provocation, upon a sudden falling out, with an instrument not likely to produce death, the jury might infer a want of malice, and in such case it would be voluntary manslaughter; but if the killing was done upon a sudden heat of passion, provoked by words and abusive language used by the deceased, with a deadly weapon, it would be murder, the weapon used showing the intent on the part of the accused to take human life." In *Rogers* v. *Slale,* 128 *Ga.* 67 (3), the court held: "The fact that the deceased, the wife of the slayer, may have been unchaste would not of itself amount to a justification of the homicide; nor would it, in the absence of a sudden heat of passion, resulting from adequate cause, be sufficient to reduce the homicide below the grade of murder." In that case, as stated in the opinion, the defendant "insists that his wife had been guilty of such conduct as to satisfy him that she was unchaste and a woman of bad character." The court said that "even if the defendant's conclusions from what he had observed of his wife's conduct were correct, it did not justify him in taking her life, nor reduce the killing from the crime of murder to any lower degree of homicide." Under the code and under the decisions, it has been uniformly held, that, notwithstanding the heinous wrongs that may have been done, if homicide is committed unlawfully under circumstances which do not exclude all idea of deliberation or malice either express or implied, the homicide is not reduced from murder to manslaughter. The question, therefore, is whether, under the facts of this case, malice is excluded.

Under the undisputed facts shown by the evidence and repeated in the statement of the accused, the accused on Monday morning was told that his wife had been guilty of illicit intercourse with a named man. He waited until Wednesday, when his wife, along with others, was at a cemetery near a colored church. He left his home and his duties, together with several other men, and went in an automobile to the cemetery. He had provided and was armed with a pistol, a deadly weapon. On arrival he did not go immediately to his wife, but after a few moments he approached within calling distance and requested her to come to him. She made no answer. He thereupon approached and called her. She

still made no answer to him. She was sitting with a baby in her lap. He drew his pistol, and she ran with the baby in her arms around the cemetery. The accused pursued her until she fell, the baby rolling on the ground from her. As she undertook to arise the accused came upon her. Placing his left hand upon her shoulder to prevent her from rising, he shot her in the side. As she fell to the ground he shot three more bullets into her prostrate body. She died almost instantly. Can it be said in any view of the case that he was actuated by that sudden heat of passion which will reduce the crime from murder to manslaughter as provided in the Penal Code, § 65? Could the jury say that the circumstances were sufficient to exclude all idea of deliberation and malice, either express or implied? Certainly he had deliberately armed himself with a deadly weapon and sought his wife out at the cemetery. He had had this information since Monday morning, and could have inquired of her as to its truth at any time at his home between Monday morning and Wednesday. An additional fact appears in the evidence, that he was preparing to leave his wife and go off to Florida with the wife of another man. In *Perry* v. *State,* 102 *Ga.* 365, at p. 376, the court said: "Unquestionably, a homicide committed on Monday could not be justified by proving that on the preceding Friday the deceased had committed an offense upon the wife of the accused; and this would be equally true if the crime of the deceased had been done on the Saturday after that Friday. Assuming, then, that though such a crime was committed on Friday the husband did not know of it until the next day, and on the following Monday hunted down and killed the offender, he would be in no better position than if the knowledge on which he acted had come to him on the very day of the offense which provoked his subsequent act of vengeance." In the tenth headnote on p. 367 of the same case, it was said: "One against whom or whose wife an offense, no matter how heinous, has been committed, can not in law be justified 'in taking vengeance in his own hands and in deliberately seeking out and following up the wrong-doer and slaying him.'"

It is insisted, however, that under the evidence the charge as requested should have been given to the jury, because the question of cooling time was one exclusively for determination by the jury. It is a correct abstract principle of law that the question of cooling

time is for the jury, but not where the undisputed facts demand a finding that the accused acted with deliberation, and, armed with a deadly weapon on Wednesday after the information came to him on Monday of the illicit intercourse, deliberately shot down his defenseless wife. According to his own words, the accused went to the scene of the homicide with the deliberate intention to kill Hanks. He went armed with a loaded pistol. The fact that he did not find Hanks there, but found his wife and coolly, deliberately, and cruelly killed her, destroys the contention that he acted upon a sudden heat of passion aroused by his wife's admission, and that he acted on the impulse. In the circumstances shown in this case, there is nothing to justify the excitement of passion, and therefore cooling time does not enter into it. For these reasons the court did not err in refusing to instruct the jury as requested.