HUMPHREYS *v.* THE STATE.

No. 8873. SEPTEMBER 14, 1932. REHEARING DENIED SEPTEMBER 26, 1932.

*Hooper & Hooper* and *R. S. Wimberly,* for plaintiff in error.
*George M. Napier, attorney-general, Hollis Fort, solicitor-general, T. R. Gress, assistant attorney-general,* and *G. Y. Harrell,* contra.

HILL, J. John Lee Humphreys was indicted in Stewart superior court for the murder of his wife, Fannie Lee Humphreys, by shooting her with a shotgun. He was tried and convicted without a recommendation to mercy. He made a motion for new trial on the general grounds and on two special grounds. His motion was overruled, and he excepted.

According to the testimony of quite a number of witnesses, the defendant was seen on the morning of October 14, 1931, driving an open touring car belonging to his employer, out from the town of Lumpkin, his wife being crouched down in the rear of the automobile. The car turned out into a side road. A few minutes thereafter the rural mail carrier saw the car re-enter the highway and drive away. The mail carrier discovered a shotgun in the road and picked it up. It had two discharged shells in the barrels. He saw a car ahead of him which he recognized as Thad Humber's car, and a colored boy was driving. The driver of the car looked back, stopped the car, and saw the mail carrier get the shotgun, and then drove away at a fast rate of speed. Within a few minutes thereafter the defendant was recognized by a number of witnesses returning in the automobile, and they testified that no one was in the car with him. On the night of that same day the defendant was recognized driving the same car, with several people in the car, on the road and within a short distance of where the body of the deceased was found the next morning in a ditch alongside the road. At the spot where the car turned out of the main highway in the morning, tracks of a man and a woman were found, and two large spots of blood. The deceased was killed by two charges from a shotgun in the back of the head, and in the back near and at the "belt line." About the time the defendant was seen driving in the vicinity of this place, witnesses testified they heard seven shots fired, five pistol shots and two from a shotgun. When the body of deceased was found, oats and oat straw were found in her clothing and in her hair. The back of the automobile had oat straw and shattered oats in it. The gun and pistol were identified as the property of Mr. Thad Humber, the employer of the defendant. The defendant was suing his wife for a divorce. A fellow prisoner with the defendant testified that he stayed in the cell with the defendant several nights, placed there by the sheriff for the express purpose of waiting on the defendant, and that the defendant made a statement to him with reference to the killing, and the next night the sheriff instructed this witness to ask the defendant a number of questions with reference thereto, which he did, and the listening sheriff recorded the questions and answers. The statement made by the defendant to this witness, and the questions and answers heard and recorded by the sheriff and testified to by him, were to the effect that the defendant and his

wife drove out the road the morning of the 14th, his wife secreted in the back of the car; that he drove up to the turnout road, and there he accused his wife of running around with another man; a quarrel ensued, and the defendant shot his wife. That night he returned in the automobile with his mother, grandmother, and one other; they secured the body of his wife, wrapped it in a quilt, drove some distance away, and deposited the body in the ditch. The evidence introduced by the defendant was in the nature of an alibi, and of his good character. In his statement to the jury he said that he did not kill his wife, and that he did not make the statement or confession testified to by the sheriff and the witness who was in the jail cell with him.

The verdict is supported by the evidence.

■ Ground 1 of the amendment to the motion for new trial complains that the court erred in charging the jury as follows: "The defendant has also introduced certain evidence for the purpose of showing good character upon his part. The court charges you that in criminal cases the defendant is allowed, if he sees fit, to offer evidence as to his general good character. When such evidence is offered, it is the duty of the jury to take that testimony, along with all the other testimony in the case, in determining the guilt or innocence of the defendant. Good character is a positive substantive fact, and may of itself be sufficient to generate in the minds of the jury a reasonable doubt as to the guilt of the defendant; and if so, it would be their duty to acquit. It is the duty of the jury to take any evidence of general good character, along with all the other evidence in the case; and if in doing so the jury should entertain a reasonable doubt as to the guilt of the defendant, they should acquit. Nevertheless, if the jury should believe the defendant guilty beyond a reasonable doubt, it would be their duty to convict, notwithstanding evidence as to general good character." It is contended that the charge upon the general characer of the defendant was not authorized by the evidence or the defendant's statement, and that it was calculated to create in the minds of the jury the impression that movant had undertaken to prove his general character and had failed to do so, and could only prove good character for peaceableness, and that the inference was plain from such apparent failure that the general character of the defendant was bad. It is also contended that the charge placed upon the defendant a burden

from which the law guards him, that of proving his general character to be good as a defense. The witnesses for the State used such expressions as "I never heard of any trouble he had," and "I would say his character for peaceableness was good. I never heard anything to the contrary." Another witness testified: "I think I know his general character for peaceableness in the community. It is good as far as I know. I never heard of his doing anything." We do not see how the charge complained of could have been harmful to the defendant. The court charged the jury that they could consider good character as a positive substantive fact which may of itself be sufficient to generate in the minds of the jury a reasonable doubt as to the guilt of the defendant; and if so, it would be their duty to acquit. "The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." Penal Code, § 1019. The exception to the charge as given is without merit.

■ Exception is taken to the failure of the court to give in charge to the jury the law of voluntary manslaughter, which movant insists was demanded by the evidence. The evidence of the witness Benny Parcell, for the State, was as follows: "He [the defendant] said he shot her about B. Burk. . . He said he was tired of her running from him for that man. . . John Lee said he had been with Fanny Lee just before he shot her. He told me that when he got to talking to her he said, 'I am tired of you running from me like you do;' she said, 'John Lee, if you forgive me for this time, I won't do it any more;' and that time he shot her." It is argued that this evidence authorized the inference that the defendant killed his wife in a sudden and uncontrollable heat of passion and indignation on discovery of the fact of his wife's infidelity, in which case the homicide would have been manslaughter and not murder, and that the court should have so instructed the jury, and that his failure to so charge the jury was prejudicial error. Under the decision of this court in *Stevens* v. *State,* 137 *Ga.* 520 (73 S. E. 737, 38 L. R. A. (N. S.) 99), the facts of the present case would not authorize the submission to the jury of the theory of voluntary manslaughter. It was there held: "If a wife had been suspected by her husband of infidelity, and some little time thereafter she stated to him that he had been guilty of adultery, and expressed an

intention to see her paramour again, and if thereupon her husband seized a gun and killed her, such facts were not sufficient, under Penal Code (1910), § 65, to authorize submission to a jury of the theory of voluntary manslaughter, though a charge on that subject was requested." But counsel for plaintiff in error asks this court to review the *Stevens* case and overrule that decision. We have reviewed it and decline to overrule it. The ruling therein was based upon the Penal Code (1910), § 65, which declares: "In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or *other equivalent circumstances* [italics ours] to justify the excitement of passion, and to exclude all idea of deliberation or malice either express or implied. Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." In delivering the opinion of the court in the *Stevens* case, Mr. Justice Lumpkin said: "It was argued that while the words uttered by the wife would not justify the homicide, or amount to an assault or an attempt to commit a serious personal injury on the accused, they might amount to 'other equivalent circumstances sufficient to justify the excitement of passion,' and suffice to reduce the crime to voluntary manslaughter. We can not concur in this construction of the statute. Immediately following the words last quoted, it is declared that provocation by words shall in no case be sufficient to reduce the crime from murder to manslaughter, thus excluding words alone from amounting to 'equivalent circumstances.' *Edwards* v. *State, 53 Ga.* 428." See in this connection *Rogers* v. *State,* 128 *Ga.* 67 (3) (57 S. E. 227, 10 L. R. A. (N. S.) 999, 119 Am. St. R. 364).

The evidence for the State tended to show that on the day previous to the day on which the body of the deceased was found, the defendant was seen in an automobile with his wife crouched down in the rear seat, going in the direction where the crime was committed. It was testified that the defendant and two women were seen after dark on the night of the day the homicide was committed, going in the direction where the body was found in an out-of-the-way place on a side road, lying in a ditch with two shotgun wounds, one in the back of her head, and the other in the back of her body, and a pistol wound also in the back of her head, and that the body

had been taken from where the deceased was shot and removed to another point nearer the main road on the side road where she was killed. All these circumstances tended to show premeditation, and that the killing was not the result of that sudden heat of passion which is supposed to be irresistible. The evidence further showed that seven shots were fired, five from a revolver and two from a shotgun; and even if, as stated above, there was evidence tending to show that the defendant was not present at the scene of the homicide at the time it occurred, the crime was one of premeditated murder and not voluntary manslaughter. The court did not err in failing to charge the law of voluntary manslaughter; for in no view of the case was voluntary manslaughter involved.

4. The court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

Bell, J., concurs in the judgment.

Atkinson, J., dissenting. John Lee Humphreys was convicted, without any recommendation by the jury, of the murder of Fannie Lee Humphreys. In one ground of the motion for a new trial complaint is made of the omission, without request, to charge the law of voluntary manslaughter as defined in the Penal Code, §§ 64, 65. There was uncontradicted evidence that the persons named were husband and wife, living in a state of separation. There was other evidence as to statements by the defendant, substantially as follows: that "he killed his wife down there below the bridge;" that "he shot her twice with a shotgun" and "one time with a pistol;" that "he shot her about B. Burk;" that "he shot her about going with B. Burk;" that he (defendant) "had been with" his wife "just before he shot her;" that "when he got to talking to her he told her, 'I am tired of your running from me like you do;' she said 'John Lee, if you forgive me for this time, I won't do it any more,' and that time he shot her;" that "she put one hand on one shoulder and the other hand on the other shoulder and asked him to forgive her." In the Penal Code, § 65, it is declared: "In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. Provoca-

tion by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and be punished as murder." The question is does the above evidence show "other equivalent circumstances" within the meaning of this section of the Code? In *Mack* v. *State,* 63 *Ga.* 693, 696, it was said: "What circumstances will present this equivalence and justify the excitement of passion, and exclude all idea of deliberation or malice, the law does not undertake to say; it furnishes a standard, and leaves the jury in each case to make the comparison, and determine whether the special facts of the case before them come up to that standard or not." See also *Coleman* v. *State,* 149 *Ga.* 186 (99 S. E. 627). In *Rumsey* v. *State,* 126 *Ga.* 419 (2) (55 S. E. 167), it was said: "In order to reduce a homicide from the grade of murder to that of voluntary manslaughter, where there was neither an actual assault upon the slayer nor an attempt to commit upon him a serious bodily injury, it is not necessary that the proof should show that the circumstances of the killing were in the nature of an assault or an attempt to seriously injure his person, but only that the circumstances were such as would as much justify the excitement of passion as would an actual assault or attempt to commit a serious personal injury." In *Battle* v. *State,* 133 *Ga.* 182 (2) (65 S. E. 382), it was held: "The law does not require 'other equivalent circumstances' referred to in section 65 of the Penal Code to be in the nature of an assault or an attempt to commit a serious personal injury by the deceased, but the circumstances therein referred to must be the equivalent of an assault, or an attempt to commit a serious personal injury, in excluding all idea of deliberation or malice and in justifying the excitement of passion. The 'other equivalent circumstances' referred to must be such as would as much exclude all idea of deliberation or malice and justify the excitement of passion as would an assault, or an attempt to commit a serious personal injury." The evidence as to conduct of the wife illustrated by the words attributed to her in the foregoing quotations was in-

sufficient to show adultery or confession of adultery by the wife or cause for arousing irresistible passion on the part of the defendant, and consequently did not authorize a charge on the law of voluntary manslaughter. The facts differ from those involved in the recent case of *Smith* v. *State,* 174 *Ga.* 878 (164 S. E. 762), and those involved in the following cases cited by the attorneys for the plaintiff in error: *Hill* v. *State,* 64 *Ga.* 453 (3), where the defendant killed a man who had debauched his wife on meeting him the first time after knowledge of his guilt; *Richardson* v. *State,* 70 *Ga.* 825, 829, where the defendant killed a man after hearing that he was attempting to commit adultery with defendant's wife; *Mize* v. *State,* 135 *Ga.* 291, 297 (69 S. E. 173), where the man admitted to defendant that he had debauched his daughter; *Smith* v. *State,* 168 *Ga.* 611, 612, 616 (148 S. E. 531), where defendant's daughter informed him of the man's attempt to debauch her; *Biggs* v. *State,* 29 *Ga.* 723 (4), 729, 730 (76 Am. D. 630), where a husband met and killed a man, next morning, who had attempted during the night to debauch his wife; *Daniels* v. *State,* 162 *Ga.* 366 (133 S. E. 866), where a wife killed a mistress of her husband after discovery of the relationship; *McLendon* v. *State,* 172 *Ga.* 267 (3) (4) (157 S. E. 475), where defendant found his wife secluded in a house at night with another man. For the reasons stated above, it would be unnecessary to consider the request to review and overrule the decision in *Stevens* v. *State,* 137 *Ga.* 520 (supra), where it was held: "If a wife had been suspected by her husband of infidelity, and some little time thereafter she stated to him that she had been guilty of adultery, and expressed an intention to see her paramour again, and if thereupon her husband seized a gun and killed her, such facts were not sufficient, under the Penal Code (1910), § 65, to authorize submission to the jury of the theory of voluntary manslaughter, though a charge on that subject was requested." On review that ruling should be overruled, because it misconstrues and misapplies the statute embodied in the Penal Code, § 65. Whether voluntary manslaughter was involved, as founded on "other equivalent circumstances," depended not upon the mere words spoken by the woman, but upon the facts as to her past, present, and future conduct, as portrayed by the words. The facts thus portrayed were sufficient to authorize the jury to find voluntary manslaughter. This accords with the rulings in several of the cases cited above.

Another special ground of the motion for a new trial is as follows: "Because movant contends the court erred in charging the jury in said case as follows: 'The defendant has also introduced certain evidence for the purpose of showing good character upon his part. The court charges you that in criminal cases the defendant is allowed, if he sees fit, to offer evidence as to his general good character. When such evidence is offered, it is the duty of the jury to take that testimony, along with all the other testimony in the case, in determining the guilt or innocence of the defendant. Good character is a positive substantive fact, and may of itself be sufficient to generate in the minds of the jury a reasonable doubt as to the guilt of the defendant; and if so, it would be their duty to acquit. It is the duty of the jury to take any evidence of general good character, along with all the other evidence in the case; and if, in so doing, the jury should entertain a reasonable doubt as to the guilt of the defendant, they should acquit. Nevertheless, if the jury should believe the defendant guilty, beyond a reasonable doubt, it would be their duty to convict, notwithstanding evidence as to general good character.' Movant contends that in so charging the court placed in issue before the jury the general character of the defendant, notwithstanding the fact that the defendant had not put such character in evidence. (a) The charge of the court upon general character of the defendant was not authorized by the evidence or the defendant's statement. (b) This charge was calculated to create in the mind of the jury the impression that movant had undertaken to prove his general good character and had failed to do so, and could only prove good character for peaceableness. The inference was plain from such apparent failure that the general character of the defendant was bad. (c) This charge placed upon the defendant a burden from which the law jealously guards him—that of proving his general character to be good as a defense. (d) Such charge was especially harmful in this case, it being a capital case where the jury had the right, for any reason it saw fit, to recommend the defendant to the mercy of the court. In a case of life and death, where any circumstance or feature might easily turn the scales, such an apparent failure to establish general good character under the charge given might well have influenced the jury in failing to recommend movant to the mercy of the court in connection with the verdict of guilty. (e) It is not apparent that

such charge was not harmful to the defendant and therefore a new trial should be granted because of such erroneous charge." The charge complained of was not accurately adjusted to the evidence. The defendant did not put his general character in issue, but did put in issue his general character for peaceableness. The charge was likely to confuse the jury by suggesting that there was an issue as to the defendant's general character, which they might find there was no evidence to support, and at least prevent them from according to the defendant a recommendation that would prevent the extreme penalty of the law.

RUSSELL, C. J., concurs in the views expressed in the foregoing dissent.